UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OREST BAIDAN,
        Plaintiff,

v.

JACOB SHULL,
        Defendant.

Case No. 24-cv-03171-VKD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS UNLAWFUL ARREST CLAIM IN AMENDED COMPLAINT**

Re: Dkt. No. 25

    Plaintiff Orest Baidan brings this action against defendant Jacob Shull, an officer of the Mountain View Police Department, asserting violations of his civil rights, pursuant to 42 U.S.C. § 1983.[1]  Dkt. No. 1.  In his original complaint, Mr. Baidan asserted two claims against Officer Shull: (1) use of excessive force in violation of the Fourth Amendment, and (2) unlawful arrest in violation of the Fourth Amendment.  *Id.*  On August 8, 2024, Officer Shull moved to dismiss Mr. Baidan's second claim for unlawful arrest pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure but did not challenge Mr. Baidan's excessive force claim.  Dkt. No. 13.  The Court granted Officer Shull's partial motion to dismiss and gave Mr. Baidan leave to amend his complaint.  Dkt. No. 23.

    On October 31, 2024, Mr. Baidan filed an amended complaint, containing only his second claim for unlawful arrest.  Dkt. No. 24.  Officer Shull moves to dismiss the amended complaint pursuant to Rule 12(b)(6) and for a more definite statement pursuant to Rule 12(e) to clarify

---

[1] All named parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 19, 22.

1   whether Mr. Baidan intended to abandon his excessive force claim by failing to replead.  Dkt. No.
2   25.  Mr. Baidan opposes the motion to dismiss and has clarifies that he did not intend to abandon
3   his excessive force claim.² Dkt. No. 30.  The Court finds this matter suitable for decision without
4   oral argument.  *See* Civil L.R. 7-1(b).

5         Upon consideration of the moving and responding papers, the Court grants Officer Shull's
6   motion to dismiss Mr. Baidan's claim for unlawful arrest.

7   **I.    BACKGROUND**

8         The facts of the original complaint are summarized in the Court's prior order.  Dkt. No. 23.
9   In the amended complaint, Mr. Baidan omits most of these facts and adds allegations describing an
10  interaction between his ex-wife, Valentyna Baidan, and Officer Shull on the night of the arrest.
11  Dkt. No. 24 ¶ 6.  Mr. Baidan's amended complaint attaches two documents that purport to be
12  transcripts of that interaction.  *See id.*, Exs. A and B.  These documents reflect that at about 6:00
13  p.m. on May 26, 2022, Ms. Baidan and her children went to a police station and spoke to Officer
14  Shull and at least one other officer regarding alleged abuse by Mr. Baidan.  *Id.* ¶ 6; Ex. A at ECF
15  14.  Ms. Baidan described to the officers an altercation between herself and Mr. Baidan from
16  earlier in the day in which she says Mr. Baidan intentionally spit on her.  *Id.*, Ex. B at ECF 27.

17        In his original complaint, Mr. Baidan alleged that on May 26, 2022 at around 11:00 p.m.,
18  Officer Shull came to his house and asked Mr. Baidan if he had spit on Ms. Baidan.  Dkt. No. 1
19  ¶ 6.  After Mr. Baidan responded that he had not, Officer Shull arrested him.  *Id.*  In the amended
20  complaint, Mr. Baidan omits these allegations.  He pleads only that at some point he attempted to
21  show Officer Shull "a recording of a prior incident in October, where Plaintiff's ex-wife allegedly
22  assaulted Plaintiff while engaging in derogatory remarks about his disability," which Officer Shull
23  refused to view "and instead escalated the encounter."  Dkt. No. 24 at ECF 5.

24

---

25  ² Mr. Baidan's opposition to Officer Shull's motion to dismiss was due on November 29, 2024.
26  On December 3, 2024, Mr. Baidan filed a motion for leave to file his opposition brief late,
    together with the opposition brief itself.  Dkt. No. 29.  Given Mr. Baidan's pro se status, the
27  explanations he provided for the late filing, and the absence of prejudice to Officer Shull, the
    Court grants Mr. Baidan's motion for leave to file a late opposition brief.  As the opposition brief
28  is already on the docket (Dkt. No. 30), Mr. Baidan need not take any further action.

United States District Court
Northern District of California

The amended complaint also attaches a transcript that purports to reflect a colloquy between Officer Shull and a state court judge regarding an application for a temporary restraining order. *Id.*, Ex. C. Mr. Baidan does not allege the date of this colloquy, but it appears to have occurred on the same date (May 26, 2022) Ms. Baidan visited the police station and Mr. Baidan was arrested. *Id.*, Ex. C at ECF 39. Mr. Baidan alleges that Officer Shull "presented a selectively biased version of events" to the state court judge, excluding information about "Plaintiff's disability and Plaintiff's exculpatory video evidence." *Id.* at ECF 6.

Mr. Baidan seeks declaratory relief stating that Officer Shull violated his rights under the Fourth Amendment, compensatory and punitive damages, and attorneys' fees and costs. *Id.* at ECF 7.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

3

1  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations
2  must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555
3  (citations omitted). However, only plausible claims for relief will survive a motion to dismiss.
4  *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable
5  inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to
6  provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-
7  unlawfully-harmed-me accusation." *Id.* at 678.

## III. DISCUSSION

### A. Unlawful Arrest

Mr. Baidan claims that Officer Shull arrested him without probable cause in violation of his rights under the Fourth Amendment. Dkt. No. 24 at 6-7. Officer Shull once more asserts that probable cause existed to arrest Mr. Baidan for misdemeanor spousal battery under California Penal Code § 243(e).[3] Dkt. No. 25 at 8-9; *see also* Dkt. No. 23 at 4. Mr. Baidan does not dispute that he was arrested for spousal battery under § 243(e). *See* Dkt. No. 30.

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.* (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). "Probable cause is an objective standard. The arresting officers' subjective intention . . . is immaterial in judging whether their actions were reasonable for Fourth Amendment purpose." *Lopez*, 482 F.3d at 1072.

---

[3] Under California law, a battery "is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. "The slightest degree of touching is sufficient" to establish battery. *In re B.L.*, 239 Cal. App. 4th 1491, 1495 (2015). This offense incurs specific penalties when committed "against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship." Cal. Penal Code § 243(e)(1).

"Generally, officers may not rely solely on the claim of a citizen witness that he was the victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Alexander v. City of Brisbane Inc.*, No. 20-cv-04563-WHO, 2021 WL 1700175, at *6 (N.D. Cal. Apr. 29, 2021). However, "[a] sufficient basis of knowledge is established if the victim provides 'facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.'" *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003).

In granting Officer Shull's first motion to dismiss the unlawful arrest claim, the Court stated:

> The complaint does not plead facts sufficient to support a claim for unlawful arrest. Mr. Baidan's opposition suggests that he was aware Officer Shull entered his "private property" in response to a report from Mr. Baidan's wife that she had been battered—circumstances which bear directly on whether Mr. Baidan properly may assert a claim for unlawful arrest—but the complaint simply omits any factual allegations regarding these matters. *In view of Mr. Baidan's apparent concession that his wife did make a report to law enforcement, and that Officer Shull questioned him about that report before taking him into custody*, the Court cannot plausibly infer from the existing allegations that Officer Shull lacked probable cause to arrest Mr. Baidan.

Dkt. No. 23 at 5 (emphasis added). In finding that Mr. Baidan failed to sufficiently plead a lack of probable cause, the Court inferred, based on the parties' briefing, that Officer Shull had come to Mr. Baidan's residence in response to an earlier report made by Ms. Baidan. Now, in his amended complaint, Mr. Baidan *affirmatively* makes this allegation and attaches transcripts of Ms. Baidan's communications with Officer Shull and another officer.[4] Dkt. No. 24, Exs. A and B.

Officer Shull argues that the amended complaint still fails to state a claim for unlawful

---

[4] Generally, in deciding a motion to dismiss brought under Rule 12(b)(6), a court may not consider material outside the pleadings without converting the motion into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, an exception exists where documents are "properly submitted as part of the complaint" or, if they are not "physically attached to the complaint," the "authenticity [of the documents] . . . is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (quotations omitted).

1   arrest and that the details of Officer Shull's interaction with Ms. Baidan, as reflected in the
2   transcripts attached to the amended complaint, undermine Mr. Baidan's claim that he was arrested
3   without probable cause for battery.  Dkt. No. 25 at 8-9.  Mr. Baidan does not dispute that
4   deliberately spitting on his wife constitutes spousal battery.  However, he responds that the details
5   of the interaction between Ms. Baidan and Officer Shull support his claim that Officer Shull
6   lacked probable cause to arrest him for that offense because they show that Officer Shull failed to
7   "independently investigate the basis of [Ms. Baidan's] knowledge," such as by "reviewing video
8   evidence Plaintiff offered, examining the inconsistencies in Plaintiff's ex-wife's statements, and
9   considering Plaintiff's physical limitations due to his disability."  Dkt. No. 24 at ECF 6; Dkt. No.
10  30 at ECF 2.

11        The Court agrees with Officer Shull that the amended complaint does not plausibly state a
12  claim for unlawful arrest.  First, the video evidence to which Mr. Baidan refers does not concern
13  the spitting incident on May 26, 2022 which forms the basis of the current probable cause
14  analysis.  Indeed, Mr. Baidan acknowledges that the video depicts a "prior incident" and does not
15  depict any events that occurred on May 26, 2022.  Dkt. No. 24 at ECF 5.

16        Second, Mr. Baidan does not identify any material inconsistencies in Ms. Baidan's
17  statements to Officer Shull that might have caused a reasonable officer to question whether the
18  incident she complained of had occurred.  The transcript of Ms. Baidan's communications with
19  Officer Shull reveal that she told the officer Mr. Baidan had deliberately spit on her, even after the
20  officer asked whether the spitting might have been accidental, as reflected in the following
21  exchange:

> **Ms. Baidan:** I'm in the driver's seat. My middle one is on my front seat. And she's in the back. He starts yelling with spit in my face. He started, he's opening the doors and shutting them down, saying. What are you doing? Like, why are you taking her away?
>
> **Officer Shull:** He spit in your face?
>
> **Ms. Baidan:** Yeah.
>
> **Officer Shull:** What are you talking about? Like what? Like, where did it hit you?

**Ms. Baidan:** Here.

**Officer Shull:** On the side of your head?

…

**Officer Shull:** Do you, think that it was an intentional, like spit or was it like he was just talking?

**Ms. Baidan:** Oh, no, no, no.

**Officer Shull:** Okay.

**Ms. Baidan:** It's for one spit in the face and clothes. Basically. I'm sitting here, he walks here. He's starting closing the door. We yelling. Can I please do a demonstration?

**Officer Shull:** Not right now. Let's just stick with them. Okay. So hit the left side of your, like forehead face here. Okay. Gimme one sec. . . . . Okay. And then you said that it was intentional?

**Ms. Baidan:** Oh yeah.

**Officer Shull:** Okay, and that was while you were in the driver's seat?

**Ms. Baidan:** Yes, so he's opening and closing the door saying. Get out, what are you doing? Are you sure what you're doing? You're like a whore calling me names. So [Redacted] at this point, both of them are scared. [Redacted] gets out of the car and . . .

**Officer Shull:** You said he kept opening and closing the door?

**Ms. Baidan**: Yeah,

**Officer Shull:** Or you would close the door and he would open it?

**Ms. Baidan**: No, I would close the door and he would, yeah, like, I don't know.

**Officer Shull:** So, he kept opening the door after you would close it?

**Ms. Baidan:** Mm hmm.

**Officer Shull:** Approximately how many times?

**Ms. Baidan:** Five.

**Officer Shull:** Okay, and then what? So the kids were scared?

**Ms. Baidan:** [Redacted]'s crying. Uh, she said something. Don't do it. Why are you yelling at her? Something like that. I don't quite remember what she said.

Dkt. No. 24, Ex. B at ECF 27.

7

Third, Mr. Baidan's argument that Officer Shull failed to investigate the alleged offense before arresting him is inconsistent with the transcripts attached to the amended complaint. *Id.*, Exs. A and B. The transcripts reflect that Officer Shull interviewed Ms. Baidan at length and, in addition to the spitting allegations, gathered further context from her and her children regarding Mr. Baidan's overall threatening behavior on May 26, 2022, including statements that he spit on Ms. Baidan while yelling at her, insulting her, repeatedly opening the door of the car in which she was seated with her children despite her efforts to close it, and demanding to know what she was doing. *Id.*, Ex. B at ECF 27. While Mr. Baidan suggests that Officer Shull should have interpreted Ms. Baidan's statements as merely "describing Plaintiff as someone who, when speaking emotionally, may have saliva come out as he talks," *id.* ¶ 20, the question is whether, considering the totality of circumstances known to Officer Shull as alleged in the amended complaint (including the attached transcripts), Mr. Baidan plausibly alleges it was unreasonable for Officer Shull to credit Ms. Baidan's statements that Mr. Baidan deliberately spit on her. *See id.*, Ex. B at ECF 27. There are simply no allegations in the amended complaint that support Mr. Baidan's thesis that Ms. Baidan's statements had such "inconsistencies" that no reasonable officer would credit or rely upon. *See Peng*, 335 F.3d at 978 ("[Complaining witness] provided sufficiently detailed facts regarding the incident to support a finding that probable cause to arrest existed."); *see also Dolzhenko v. City of Los Angeles*, No. 21-cv-02088-DSF-GJS, 2023 WL 3292858, at *7 (C.D. Cal. May 5, 2023), *appeal dismissed*, No. 23-55495, 2023 WL 8447269 (9th Cir. Nov. 15, 2023) (on a motion to dismiss, finding failure to plead no probable cause where "there is nothing alleged in any version of Plaintiffs' complaints that could support a finding that the officers should have disbelieved [the complaining witness], no matter how liberally Plaintiffs' allegations are construed."); *Alexander*, 2021 WL 1700175, at *7 ("Conclusory allegations that [the officers] 'conspired' with [defendant] to get [plaintiff] arrested . . . do not suffice" to defeat probable cause); *Foster v. Berkeley Police Dep't*, No. 10-cv-3703 SI, 2011 WL 5861266, at *6 (N.D. Cal. Nov. 22, 2011) (finding complaint alleged "Officer McDougall spoke to plaintiff before arresting her . . . . [and] had also been given a sufficiently detailed report by [complaining witness] to establish probable cause that plaintiff was trespassing.").

8

1    Fourth, Mr. Baidan does not plausibly allege any facts supporting his argument that
2    "severe mobility impairments and physical condition make [Ms. Baidan's] spitting allegation
3    implausible." Dkt. No. 30 at ECF 2. Nothing in the amended complaint suggests that on May 26,
4    2022, Mr. Baidan was physically unable to stand outside Ms. Baidan's car, open the car door, yell,
5    or spit in her face.

6    Finally, to the extent Mr. Baidan argues that Officer Shull "misrepresented the facts"
7    during his colloquy with a state court judge in connection with an application for a restraining
8    order against him, Mr. Baidan fails to explain how any statements made during that colloquy show
9    that Officer Shull arrested him without probable cause. Dkt. No. 30 at ECF 2; *see also* Dkt. No.
10   24 at ECF 6. Instead, Mr. Baidan argues only that Officer Shull did not advise the judge of Mr.
11   Baidan's disability or inform the judge of the "lack of corroborating evidence" supporting Ms.
12   Baidan's statements. Dkt. No.30 at ECF 2. The Court is unpersuaded that Officer Shull's
13   colloquy with the judge bears on the question of whether Officer Shull had probable cause to
14   arrest Mr. Baidan in the first instance.

15   As the Court has already given Mr. Baidan an opportunity to amend his complaint to assert
16   a claim for unlawful arrest, the Court determines that any further amendment would be futile. Mr.
17   Baidan's claim for unlawful arrest is therefore dismissed without leave to amend.

18   **B.     Excessive Force**

19   Although Mr. Baidan neglected to include a claim for use of excessive force in his
20   amended complaint, Mr. Baidan has since clarified that he did not intend to withdraw this claim
21   and indicates that he wishes to assert his excessive force claim "as originally pleaded in Plaintiff's
22   initial complaint." Dkt. No. 30 at 1-2. As a general rule, "an amended complaint supersedes the
23   original complaint and renders it without legal effect." *Lacey v. Maricopa Cnty.*, 693 F.3d 896,
24   927 (9th Cir. 2012). However, in view of Mr. Baidan's pro se status, the Court will permit him to
25   file a second amended complaint that contains his excessive force claim and the factual allegations
26   that support this claim, and only this claim. As the Court has dismissed the unlawful arrest claim
27   without leave to amend, the second amended complaint must not include a claim for unlawful
28   arrest.

9

## IV. CONCLUSION

For the reasons stated above, the motion to dismiss is granted. The Court dismisses Mr. Baidan's claim for unlawful arrest without leave to amend. The motion for a more definite statement is denied as moot. If Mr. Baidan wishes to proceed with his claim that Officer Shull used excessive force against him in violation of the Fourth Amendment, he must file a second amended complaint asserting this claim, consistent with the Court's directions above, no later than **February 5, 2025**. Officer Shull must file an answer to the second amended complaint by **February 19, 2025**.

**IT IS SO ORDERED.**

Dated: January 22, 2025

Virginia K. DeMarchi
United States Magistrate Judge