UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OREST BAIDAN,

Plaintiff,

v.

JACOB SHULL,

Defendant.

Case No. 24-cv-03171-VKD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 102

Plaintiff Orest Baidan brings this action against defendant Jacob Shull, an officer of the Mountain View Police Department ("MVPD"), asserting one claim for excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983. Dkt. No. 38.

Officer Shull now moves for summary judgment. Dkt. No. 102. Mr. Baidan opposes the motion.[1] Dkt. No. 110. The Court heard oral argument on the motion on August 4, 2026.[2] Dkt. No. 117. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants the motion.

## I. BACKGROUND

The following material facts are undisputed unless otherwise noted.

On the evening of May 26, 2022, Officer Shull and other MVPD officers responded to a domestic violence report at Mr. Baidan's residence in Mountain View, California. Dkt. No. 38

[1] Mr. Baidan's opposition was untimely. *See* Civil L.R. 7-3(a). Nevertheless, given the potentially dispositive nature of summary judgment proceedings, and despite the Court's skepticism as to Mr. Baidan's proffered reason for his delay, *see* Dkt. No. 109, the Court will consider the late opposition.

[2] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 19, 22.

United States District Court
Northern District of California

United States District Court
Northern District of California

¶ 7; Dkt. No. 102-1 ¶¶ 4, 15. The officers had been informed prior to arriving at the residence that Mr. Baidan possessed multiple firearms. *See* Dkt. No. 102-2 ¶ 4, Ex. B (Shull BWC at 3:02:38-53)[3]; *id.*, Ex. C (Shull BWC at 2:01:10-22).

Mr. Baidan voluntarily exited his home to speak with the officers. Dkt. No. 102-1 ¶ 16; Dkt. No. 102-3 ¶ 2, Ex. U (Baidan Dep. at 50:1-51:8). Officer Shull informed Mr. Baidan that he was under arrest for domestic violence and placed Mr. Baidan in handcuffs. Dkt. No. 102-1 ¶¶ 18-20. Officer Shull used two sets of handcuffs, linked together in a "daisy chain," to accommodate Mr. Baidan's large size. *Id.* ¶ 21; Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:37:45-5:38:12). Officer Shull locked the handcuffs after two "clicks" and double-locked the handcuffs to prevent them from tightening. Dkt. No. 102-1 ¶¶ 22-24; Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:38:12-38).

After handcuffing Mr. Baidan, Officer Shull walked with Mr. Baidan to a nearby police vehicle. Dkt. No. 102-1 ¶¶ 27-31; Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:39:45-5:40:58). Mr. Baidan stated that he could not enter the police vehicle because he did not fit and because he is disabled. Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:41:59-5:42:11). While standing by the police vehicle, Mr. Baidan requested a wheelchair or crutches and painkillers. *Id.* (Herbek BWC at 5:42:13-5:44:10). The officer advised Mr. Baidan that they could not provide him painkillers, and they did not provide him a wheelchair or crutches. *Id.* (Herbek BWC at 5:42:28-5:45:05). Instead, the officers allowed Mr. Baidan to sit on the curb, and Mr. Baidan sat down with the officers' assistance. *Id.* (Herbek BWC at 5:44:19-42). While seated on the curb, Mr. Baidan complained that his handcuffs were tight. *Id.* (Herbek BWC at 5:49:25-33). The officers explained that the handcuffs were on the loosest setting possible, and Mr. Baidan responded, "I got it. No problem." *Id.* (Herbek BWC at 5:49:30-44).

The fire department and an ambulance arrived on the scene. *Id.* (Herbek BWC at 5:54:05); Dkt. No. 102-2 ¶ 4, Ex. J (Herbek BWC at 5:59:58). Officer Shull removed the handcuffs from Mr. Baidan's right wrist while Mr. Baidan was moved to a gurney provided by medical personnel.

[3] Citations to body-worn camera video footage cite to the timestamp in the top right corner of the video.

United States District Court
Northern District of California

Dkt. No. 102-1 ¶ 42; Dkt. No. 102-2 ¶ 4, Ex. J (Herbek BWC at 6:02:43-6:03:33). Once Mr. Baidan was secured to the gurney with soft restraints, Officer Shull removed the handcuffs from Mr. Baidan's left wrist. Dkt. No. 102-1 ¶ 43; Dkt. No. 102-2 ¶ 4, Ex. M (Herbek BWC at 6:06:20-23). Mr. Baidan was handcuffed for approximately 30 minutes before being placed in the ambulance. *See* Dkt. No. 102-1 ¶ 44; Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:37:54); Dkt. No. 102-2 ¶ 4, Ex. M (Herbek BWC at 6:06:23).

The ambulance transported Mr. Baidan to El Camino Hospital for medical clearance. Dkt. No. 102-1 ¶ 45; Dkt. No. 38 ¶ 10. Officer Shull went to El Camino Hospital to speak with Mr. Baidan. Dkt. No. 102-1 ¶ 48. When Officer Shull arrived at Mr. Baidan's hospital room, Mr. Baidan was already secured to the hospital bed with a pair of red handcuffs attached to his left wrist. Dkt. No. 102-2 ¶ 4, Ex. S (Shull BWC at 7:47:06). At hospital staff's request, Officer Shull moved the handcuffs from Mr. Baidan's left wrist to his right wrist. *Id.* (Shull BWC at 7:46:59-7:48:08).

Mr. Baidan was released from custody while at the hospital. Dkt. No. 102-1 ¶ 53.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See id.* at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence but instead must produce

admissible evidence that shows there is a genuine issue of material fact for trial.[4] *See id.* A genuine dispute of fact is one that could reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.* at 248-49.

If the non-moving party fails to oppose the motion, the court must still consider whether the grant of summary judgment is appropriate based on the record. A motion for summary judgment may not be granted solely on the basis that the opponent did not contest the motion. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). However, the court may take any unchallenged facts as "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## III. DISCUSSION

Mr. Baidan asserts one claim under 42 U.S.C. § 1983, contending that Officer Shull used excessive force in violation of Mr. Baidan's Fourth Amendment rights. "Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of a federally protected right." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). Although the statute "is not itself a source of substantive rights, [it] provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation omitted). To prevail on a section 1983 claim, a plaintiff must therefore prove two elements: "(1) the defendants acting under color of state law, (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Karim-Panahi*, 839 F.2d at 624. The parties agree that Officer Shull acted under color of state law.

Mr. Baidan alleges that Officer Shull violated his Fourth Amendment rights by "forcibly plac[ing]" the handcuffs on him, "dragg[ing]" him towards the police vehicle, and keeping Mr. Baidan "physically restrained in a way that interfered with medical procedures, until hospital staff asked [d]efendant to cease interfering." Dkt. No. 38 ¶¶ 8-10. Officer Shull argues that he did not

[4] "Evidence may be offered to support or dispute a fact on summary judgment . . . if it *could be presented in an admissible form* at trial." *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 1531349, at *5 (N.D. Cal. Mar. 31, 2020) ((quoting *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014)). A party need not present evidence in admissible form as part of its summary judgment submission, so long as the party demonstrates that the evidence could be presented in admissible form at trial. *See id.*

use excessive force during the May 26, 2022 encounter, as a matter of law, and that, in any event, he is entitled to qualified immunity. Dkt. No. 102.

In opposing Officer Shull's motion for summary judgment, Mr. Baidan does not contest the evidence cited by Officer Shull or point to different or additional evidence. Dkt. No. 110. Instead, he contends that "[s]ummary judgment is premature" because the record "has not been fairly and completely produced" and because "genuine disputes" of fact remain. *Id.* at 3-5. The Court first addresses Mr. Baidan's threshold objection regarding the completeness of the record before addressing the parties' arguments regarding the excessive force claim.

**A. Mr. Baidan's Threshold Objection to the Motion**

Mr. Baidan argues that summary judgment is "premature" because the "record was not complete when the opposition deadline passed," on June 16, 2026. Dkt. No. 110 at 1. Specifically, Mr. Baidan contends that he did not have access to the 19 video files captured by MVPD officers' body-worn cameras, filed as Exhibits B through T with Officer Shull's summary judgment motion. *Id.* He also complains that he "did not have fair access to the deposition record." *Id.* at 3.

These arguments are frivolous. The record reflects that Mr. Baidan has had access to the complete set of body-worn camera video footage produced by the City of Mountain View since December 17, 2025. Dkt. No. 76; Dkt. No. 78 at 2; Dkt. No. 117. The record also reflects that he has had access since June 2, 2026 to the specific excerpts of the body-worn camera videos on which Officer Shull relies because Officer Shull served Mr. Baidan with those exhibits at the same time he served his motion. Dkt. No. 108 at 1; Dkt. No. 117. The deadline for Mr. Baidan's opposition was June 16, 2026. *See* Civil L.R. 7-3(a). Mr. Baidan did not file an opposition by June 16, 2026. Instead, on June 22, 2026, six days after the opposition deadline, he filed a motion requesting an extension of time to file his opposition. Dkt. No. 109. Mr. Baidan claimed that he needed additional time because he was involved in a car accident on June 19, 2026 "that substantially restricted his transportation and ability to travel for filing-related matters." *Id.* at 1. He also claimed that on June 19, 2026, he encountered issues with electronic filing in this action. *See id.* at 1, 3, 7. These excuses—all of which concern events that occurred *after* Mr. Baidan's

deadline to file an opposition—are unpersuasive. More importantly, Mr. Baidan has provided no plausible justification for his assertion that he did not have access to the complete collection of relevant body-worn camera video footage in sufficient time to prepare his opposition.

Mr. Baidan's complaints about not having access to the "deposition record" are equally without merit. Mr. Baidan asserts that he did not have timely access to transcripts of *his own* depositions and this inhibited his ability to oppose Officer Shull's summary judgment motion. Mr. Baidan's first deposition was taken on January 6, 2026 and his second deposition was taken on April 27, 2026. Dkt. No. 102-3 ¶¶ 2-3. Mr. Baidan concedes that he obtained transcripts of both depositions in advance of the date that his opposition was due. *See* Dkt. No. 110 at 3; Dkt. No. 117. In any event, if Mr. Baidan wished to rely on his own testimony to contest Officer Shull's motion, he need only have authored a declaration and filed it with his opposition.

Accordingly, the Court finds that the summary judgment record is not incomplete and Officer Shull's motion for summary judgment is not premature.[5]

**B. Excessive Force**

Claims of excessive force that "arise[] in the context of an arrest . . . [are] most properly characterized as . . . invoking the protections of the Fourth Amendment" against unreasonable seizures. *Graham*, 490 U.S. at 394 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). The Fourth Amendment's reasonableness inquiry "in an excessive force case is an objective one." *Id.* at 397. The question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* A court should not view the officers' actions "with the 20/20 vision of hindsight" but must instead consider "the fact that police officers are often forced to make split-second judgments." *Williams v. City of Sparks*, 112 F.4th 635, 643 (9th Cir. 2024). When, as here, a video of the incident exists and no one questions its accuracy, the Court views "the facts in the light depicted by the

[5] Mr. Baidan also objected to Officer Shull's filing of Charles Caldwell's supplemental declaration (Dkt. No. 113). *See* Dkt. No. 114. At the hearing, Mr. Baidan confirmed that his only objection to the supplemental Caldwell declaration is that it was filed "late." Dkt. No. 117. Mr. Baidan's objection is also frivolous, as the supplemental Caldwell declaration was filed at the Court's request, *see* Dkt. No. 112, and Mr. Baidan was not prejudiced by the filing.

United States District Court
Northern District of California

videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The Court will not "credit a party's version of events that the record, such as an unchallenged video recording of the incident, quite clearly contradicts." *Sabbe v. Washington Cnty. Bd. of Comm'rs*, 84 F.4th 807, 816 (9th Cir. 2023) (internal quotation and citation omitted).

The Court's analysis is guided by the *Graham* factors: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (internal citations omitted).

**1. Severity of Intrusion**

In assessing the level of force used, courts "assess both 'the risk of harm and the actual harm experienced.'" *Sabbe*, 84 F.4th at 821 (citation omitted). Mr. Baidan identifies three alleged uses of excessive force, claiming that Officer Shull "forcibly" handcuffed him, "dragged" him to the police vehicle, and "kept [him] physically restrained in a way that interfered with medical procedures." Dkt. No. 38 ¶¶ 8-10. Contrary to Mr. Baidan's allegations, the body-worn camera video footage shows that Officer Shull used only minimal force, and no more force than reasonably necessary, throughout his May 26, 2022 encounter with Mr. Baidan.

First, the video evidence shows that Officer Shull used minimal force to place Mr. Baidan in handcuffs. Specifically, the record shows that Officer Shull used two sets of linked handcuffs to accommodate Mr. Baidan's size; Officer Shull placed Mr. Baidan's hands behind his back and attached the handcuffs on the loosest possible setting without violence or resistance from Mr. Baidan; and Officer Shull locked the handcuffs to prevent them from tightening. *See* Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:38:01-38). When Mr. Baidan first complained about the tightness of the handcuffs ten minutes after he had been handcuffed, the officers explained that the handcuffs were on the loosest setting to which Mr. Baidan responded, "I got it. No problem." *See id.* (Herbek BWC at 5:49:25-44). Officer Shull's *de minimis* use of force in handcuffing Mr.

Baidan was objectively reasonable as a matter of law.[6] *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001) (finding nothing "so extraordinary as to violate the Fourth Amendment" in "normal custodial arrest," including handcuffing); *Muehler v. Mena*, 544 U.S. 93, 99-100 (2005) (holding that use of "correctly applied" handcuffs alone is only a "marginal intrusion" on an individual's Fourth Amendment interests); *Gordon v. City & Cnty. of S.F*, No. 20-cv-03910-JCS, 2021 WL 5449074, at *12 (N.D. Cal. Nov. 22, 2021) (concluding on summary judgment that arresting officer did not violate the Fourth Amendment by failing to remove handcuffs from plaintiff's wrists, extend them with an extra pair of handcuffs, or cuff plaintiff's hands in front of him when he alerted them to his shoulder pain).

Second, Mr. Baidan's claim that Officer Shull "dragged" him towards the police vehicle is entirely unsupported and directly contradicted by the body-worn camera video footage. The video evidence shows that Mr. Baidan and Officer Shull merely walked alongside each other to the police vehicle. Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:40:09-55). Officer Shull did not drag Mr. Baidan. Indeed, Mr. Baidan conceded in his deposition that Officer Shull walked with him "hand by hand" to the police vehicle and that his feet remained in contact with the ground the entire time. Dkt. No. 102-3 ¶ 2, Ex. U (Baidan Dep. at 115:18-116:6). Mr. Baidan does not present any evidence showing that there is a genuine dispute of material fact as to whether Officer Shull dragged him. Accordingly, the undisputed evidence establishes that the *de minimis* force Officer Shull used to escort Mr. Baidan to the police vehicle was objectively reasonable as a matter of law. *See, e.g.*, *Henry v. Komarovsky*, No. 24-3014, 2026 WL 120833, at *3 (9th Cir. Jan. 16, 2026) (affirming summary judgment for officers on excessive force claim because "[t]he body-worn camera video never shows either officer violently shoving [plaintiff] against the

[6] The body-worn camera video footage shows that Mr. Baidan also complained of pain on two instances when the officers moved him–first, from a standing position to a sitting position on the curb, and second, from the curb to a gurney provided by medical personnel. *See* Dkt. No. 102-2 ¶ 4, Ex. I (Herbek BWC at 5:44:20-40); *id.*, Ex. J (Herbek BWC at 6:02:07-6:03:25). Nothing in the video footage or any other evidence provided to the Court indicates that Mr. Baidan experienced prolonged periods of pain due to being handcuffed or due to the force applied during handcuffing. Rather, he complained of pain when being moved. The record reflects that when it was necessary for Mr. Baidan to be moved from the curb to the gurney, Officer Shull proactively removed the handcuffs from Mr. Baidan's right wrist to mitigate his discomfort. Dkt. No. 102-1 ¶ 42; Dkt. No. 102-2 ¶ 4, Ex. J (Herbek BWC at 6:02:43-6:03:33).

vehicle or otherwise using more than minimal force to secure him"), *cert. denied*, No. 25-7116, 2026 WL 1203409 (U.S. May 4, 2026); *Nevares v. San Jose Police Officers Flose*, No. 23-cv-06278-VKD, 2025 WL 1266906, at *5 (N.D. Cal. May 1, 2025) (finding that "no one engaged in any conduct that a trier of fact reasonably could conclude constituted excessive force" where footage from body-worn camera contradicted plaintiff's allegation that "defendants repeatedly 'slammed' him against vehicles and 'ben[t] [his] [right] wrist' until it broke").

Third, Mr. Baidan claims that "medical staff told police they were interfering with resuscitation and treatment" and Officer Shull used "'animal' restraints on his hands, legs, and other points of attachment." Dkt. No. 110 at 4. However, the footage from Officer Shull's body-worn camera shows that no "animal" restraints were used on Mr. Baidan and that the hospital staff asked Officer Shull to move the restraints to Mr. Baidan's right arm to allow medication to be administered through his left arm. Dkt. No. 102-2 ¶ 4, Ex. S (Shull BWC at 7:46:59-7:48:13). The video shows that Officer Shull immediately adjusted the restraints and then left the hospital room. *Id.* Mr. Baidan offers no evidence that Officer Shull used *any* force whatsoever, and there is no genuine dispute that, upon request of the hospital staff, Officer Shull immediately moved the restraints to accommodate Mr. Baidan's medical treatment. This conduct also was objectively reasonable as a matter of law.

Mr. Baidan argues that a genuine dispute of material fact remains regarding whether the force used in handcuffing him was reasonable or excessive, pointing to his deposition testimony that the handcuffs "didn't fit" and were "damaging [his] hands." Dkt. No. 110 at 3. But "a plaintiff's mere allegations that handcuffs caused him injury, unsupported by medical records or other evidence, are insufficient to establish that the amount of force used was objectively unreasonable." *Henry*, 2026 WL 120833, at *3. Mr. Baidan has not presented medical or any other evidence to support his claim that the handcuffs were unreasonably tight, nor has he shown that he suffered any bruising or other physical injury as a result. At most, the undisputed evidence reflects that Mr. Baidan experienced some discomfort while handcuffed. Mere discomfort, without any injury, is not enough. *See Demarest v. City of Vallejo, Cal.*, 44 F.4th 1209, 1226 (9th Cir. 2022) (affirming summary judgment for officer because plaintiff "did not present any

United States District Court
Northern District of California

evidence suggesting that the handcuffs were excessively tight or that they caused any injury"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-22 (9th Cir. 2001) (affirming summary judgment of no excessive force where officer used physical force to handcuff plaintiff resisting arrest, without injury to plaintiff); *Gaines v. Greigore*, No. 23-cv-06195-RMI, 2024 WL 5191970, at *3 (N.D. Cal. Dec. 20, 2024) (granting summary judgment for officer on excessive force claim because body-worn camera footage showed that officer had only used a "*de minimis* amount of force"); *see also Morales v. City & Cnty. of S.F.*, 603 F. Supp. 3d 841, 849 (N.D. Cal. 2022) ("The severity of the plaintiff's injury may be evidence of severity of the force used.").

On this record, no reasonable jury could find that Officer Shull used more than minimal force against Mr. Baidan. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**2. Governmental Interest**

"The greater the risk of harm and the actual harm involved, the greater the governmental interest must be to justify the use of force." *Sabbe*, 84 F.4th at 821. Courts in the Ninth Circuit use a three-step approach to evaluate the strength of the government's interest in using force: "(1) 'whether the suspect poses an immediate threat to the safety of the officers or others,' (2) 'the severity of the crime at issue,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).

"The Supreme Court has 'long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Demarest*, 44 F.4th at 1225-26 (quoting *Graham*, 490 U.S. at 396). "Accordingly, even assuming that [a plaintiff] did not actively resist and did not present an immediate security threat to [an officer], [an officer] nonetheless could properly use a reasonable degree of force to take [a plaintiff] into custody. *See id.* (affirming grant of summary judgment for officer who physically removed plaintiff from his car by grabbing his arm and handcuffed him during an arrest

at a DUI checkpoint).

As discussed above, there is no genuine dispute that Officer Shull used only minimal force to place Mr. Baidan in handcuffs, escort him to the police vehicle, and ensure he was properly restrained while at the hospital for medical clearance. To the extent Mr. Baidan contends that there was no justification for handcuffing him *at all*, he provides no support for this position. As noted above, Mr. Baidan was subject to arrest on a charge of domestic violence, a serious offense, in circumstances where Officer Shull had been informed that Mr. Baidan had access to firearms. The government interest in protecting the safety of officers and the community in these circumstances easily justifies using handcuffs during the arrest. *See Muehler*, 544 U.S. at 100 (holding government had "maximum" interest in using handcuffs to detain suspect during search of suspect's home for deadly weapons, and observing that "in such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants").

**3. Balancing**

The final step of the excessive force inquiry requires the Court to balance the gravity of the intrusion on Mr. Baidan's Fourth Amendment rights against Officer Shull's need for that intrusion. *Lowry*, 858 F.3d at 1260. Here, any intrusion on Mr. Baidan's Fourth Amendment rights was minimal and justified by Officer Shull's need to effectuate his arrest based on a charge of domestic violence.

As noted above, Mr. Baidan did not identify any evidence to support his opposition to the motion. His conclusory assertions that "[g]enuine disputes remain regarding the handcuffing and the movement to the patrol vehicle" and "regarding the restraints at the hospital," *see* Dkt. No. 110 at 4-5, do not carry Mr. Baidan's burden in opposition. *See Law v. Mooney*, No. 23-cv-05287-JST, 2025 WL 2677388, at *3 (N.D. Cal. Sept. 18, 2025) ("'Bald assertions that genuine issues of material fact exist are insufficient' to survive summary judgment.") (quoting *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (where a moving party carries its burden of production, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

United States District Court
Northern District of California

On this record, the Court finds that there are no genuine issues of material fact to be tried, and that Officer Shull is entitled to summary judgment on Mr. Baidan's Fourth Amendment excessive force claim.[7]

**IV. CONCLUSION**

Based on the foregoing, the Court grants Officer Shull's motion for summary judgment. The Clerk shall enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: August 7, 2026

Virginia K. DeMarchi
United States Magistrate Judge

[7] Because the Court concludes that Officer Shull did not violate Mr. Baidan's Fourth Amendment rights, disposing of the claim against Officer Shull, the Court does not reach the issue of qualified immunity.